IN THE CIRCUIT COURT OF THE
TWELFTH JUDICIAL CIRCUIT OF FLORIDA
MANATEE COUNTY, FLORIDA

Case No.     11CA00189

FAMILY ORIENTED COMMUNITY
UNITED STRONG, INC.,

    Plaintiff,

vs.

LOCKHEED MARTIN CORPORATION,

    Defendant.

_____/

<u>JURY TRIAL DEMANDED</u>

## <u>COMPLAINT</u>

Plaintiff, FAMILY ORIENTED COMMUNITY UNITED STRONG, INC., (FOCUS) a

Florida corporation, by and through its undersigned counsel, sues Defendant, LOCKHEED

MARTIN CORPORATION, a Maryland corporation, and alleges as follows:

### <u>ALLEGATIONS</u>

1. This is an action for damages in excess of $15,000, exclusive of interest, costs and attorneys'

   fees. In the alternative, FOCUS seeks specific performance of a Technical Consulting

   Agreement ("the Agreement") attached hereto as Exhibit A, under which Defendant was to

   provide FOCUS with funds for independent environmental consulting; environmental,

   health, and safety monitoring; and community organizing related to Defendant's

   contamination of FOCUS's neighborhood.

2. FOCUS is a non profit corporation organized and existing under the laws of the State of

   Florida, and operating in Manatee County, Florida.

3. Defendant is a national corporation that conducts business in Florida and also owns property in Manatee County, Florida.

4. Venue is proper in this court because: (1) Defendant resides and transacts substantial and continuous business in Manatee County; (2) the Agreement involved in this case was executed in Manatee County; (3) the Agreement involved in this case was to be performed in Manatee County; (4) the Agreement involved in this case was breached in Manatee County; and (5) the claims in this Complaint accrued in Manatee County.

5. On or about January 21, 2000, Defendant informed Manatee County Environmental Management officials, who then informed the Florida Department of Environmental Protection ("FDEP") that they had discovered contamination on their site in Tallevast, Florida ("the Site) and that said contamination was emanating off their site onto adjacent properties in the surrounding community.

6. Despite this reporting in 2000, the residents of Tallevast, including those whose property was directly affected by the contamination, were not notified of the chemical contamination referenced until 2003.

7. Defendant and FDEP entered into Consent Order #04-1328 on July 29, 2004, which made Defendant responsible for the Site's contamination and required Defendant to investigate the contamination and to submit a cleanup plan also known as a Remedial Action Plan (RAP) in accordance with Florida law, for FDEP to review.

8. At the time Consent Order #04-1328 was executed the Site's contamination was believed to be about 5-10 acres.

9. This Consent Order also included a requirement that Defendant pay $25,000 per year to FOCUS for technical consulting services; this obligation remains in effect separate from the

Agreement at issue here.

10. During the next several years, Defendant further investigated the Site's contamination and determined that it actually extended for greater than 200 acres -- 20-40 times the original estimate.

11. On August 3, 2008, Defendant's interim groundwater treatment system failed causing a large spill of contaminated water, which continued until FOCUS notified Defendant of the spill.

12. In a community meeting mere weeks before the spill, Defendant had informed residents of state-of-the-art "double-redundancy" safety protocols, designed to prevent such a problem with the interim system.

13. On October 13, 2008, Defendant and FDEP entered into another Consent Order, "CO #08-2254," because of the August spill.

14. This consent order differed from the first as it pertains specifically to the spill that occurred on August 3, 2008, whereas the first referred to the site cleanup as a whole.

15. On or about February 12, 2009, FOCUS and Defendant entered into the Agreement, a copy of which is attached.

16. Under the Agreement, Defendant promised to provide FOCUS with monies to fund independent environmental consulting; environmental, health, and safety monitoring; and community organizing related to Defendant's contamination of FOCUS's neighborhood from the effective date of the Agreement, July 1, 2009, until FDEP issues a No Further Action order on the Site.

17. The minimum funding amount for each of the three groups of activities varied by year based on the FDEP status of the Site, with more funds being due during the investigation and early cleanup years and less funds being due as the Agreement drew to completion.

18. Defendants were obligated to pay said funds each January 15th and July 15th every year during the term of the Agreement.

19. To assist with start up of the Agreement, Defendant also agreed to distribute an additional $25,000 to FOCUS for the period of January 1, 2009 to June 30, 2009 to be used in conformity with the stipulations in the Agreement.

20. In sum, to date, Defendant's minimum funding obligations under the Agreement have been:

    a. January 15, 2009 - $25,000

    b. July 15, 2009 - $275,000

    c. January 15, 2010 - $275,000

    d. July 15, 2010 - $275,000

21. FOCUS received the initial $25,000 payment after the Agreement was signed in February 2009.

22. Then on July 15, 2009, Defendant delivered $275,000 as required under the Agreement.

23. Defendant has not made any further payment obligations since the July 15, 2009 payment.

24. On December 4, 2009, Defendant provided notice to FOCUS that it intended to exercise its right to review FOCUS's records as prescribed under the Agreement.

25. During the months of December 2009 and January 2010, FOCUS delivered the necessary documents for Defendant to review including documents which were not related to this Agreement, but which Defendant insisted upon receiving and FOCUS delivered in the interest of cooperation.

26. As indicated above, Defendant failed to submit its January 15, 2010 payment as required by the Agreement, but throughout the early months of 2010, Defendant made assurances that it would continue its performance under the Agreement upon completion of the review.

27. FOCUS performed its duties under the Agreement and repeatedly requested performance from Defendant.

28. On March 23, 2010, Defendant sent a letter to FOCUS's attorney expressing its concern with issues related to the review and refused to deliver the monies due for 2010.

29. FOCUS contested these facts, in part, and perceives other statements as misstatements of the Agreement's terms.

30. On June 25, 2010, FOCUS again demanded that Defendants cure their material breach of the Agreement by submitting the January payment and reminded Defendant of its upcoming duty for the July 15, 2010 payment.

31. Defendant then also failed to submit the July 15, 2010 payment.

32. On September 8, 2010, Defendant informed FOCUS it had reevaluated the Agreement and would not deliver any future monies owed under the Agreement.

33. Defendant has failed to deliver any additional payments to date.

34. At all times FOCUS has complied with and performed its duties under the Agreement.

35. FOCUS remains prepared and able to perform under the Agreement and has at no time repudiated its duties identified within.

## COUNT 1 – MATERIAL BREACH OF CONTRACT

36. This is an action for damages or in the alternative, specific performance of the Agreement.

37. FOCUS again alleges the Allegations contained in paragraphs 1 through 35 of the Complaint as is fully set forth herein.

38. On January 15, 2010, Defendant failed to deliver the $275,000 payment due under the Agreement, and has not delivered it at any time thereafter.

39. On June 25, 2010 FOCUS sent a demand letter to Defendant that stated Defendant had failed to deliver the January 15, 2010 payment and was therefore, in material breach of contract.

The demand letter also informed Defendant about its second yearly payment due on July 15, 2010 that was expected to be delivered.

40. On July 15, 2010, Defendant failed to deliver the second 2010 payment due under the Agreement, and has not delivered it at any time thereafter.

41. On September 8, 2010, Defendant responded to the demand letter and informed FOCUS that it had reevaluated the Agreement and no longer intended to comply with its terms.

42. Defendant's failures to provide funds required under the Agreement, twice, amount to material breaches of the Agreement resulting in direct damage to FOCUS, and Defendant should be required to pay damages or perform as stated in the Agreement.

43. As of this date, Defendant has failed to pay a total of $550,000 in obligated funds under the Agreement.

44. FOCUS has afforded Defendant multiple opportunities to cure all breaches.

45. On January 15, 2011, Defendant is obligated to pay an additional $275,000 under the Agreement.

46. Further, Defendant's September 8, 2010 communication to FOCUS makes it clear that Defendant has no intention of curing these breaches, nor any intention of honoring their future obligations under the Agreement.

47. Based on this statement FOCUS believes it is reasonably foreseeable that Defendant will continue to breach the Agreement.

WHEREFORE, FOCUS requests that this Court enter a judgment in favor of FOCUS and against Defendant, requiring Defendant to pay damages consistent with the Agreement, including all past due payments, interest, costs, and attorneys' fees associated with this action, and any other relief that the Court deems appropriate. FOCUS believes damages is the

6

appropriate remedy for Defendant's breach, but in the alternative, if the Court determines that

damages cannot sufficiently cure Defendant's breach, FOCUS requests that this Court enter a

judgment in favor of FOCUS and against Defendant, requiring Defendant to be held to specific

performance under the Agreement. Further, FOCUS respectfully requests the Court mandate

Defendant's future specific performance pursuant to the Agreement or order Defendant to pay to

FOCUS damages commensurate with such future performance.

Respectfully submitted,

Jeanne Marie Zokovitch Paben
Fla. Bar No. 0418536
Assistant Professor of Law
Director, Earth Advocacy Clinic
Barry University
Dwayne O. Andreas School of Law
6441 E. Colonial Drive
Orlando, Florida 32807
Tel: 321-206-5761
Fax: 321-206-5755
JZokovitch@mail.barry.edu

## Certificate of Service

I hereby certify that on Monday, January 10, 2011, the foregoing document was filed with the Manatee County Clerk of Court. I also certify that the foregoing document is being timely served on Defendant by and through its registered agent via process server.

Jeanne Marie Zokovitch Paben